IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAJON COLLINS,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC,<br><br>Defendant(s). | Case No. 24-cv-04964<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dajon Collins ("Plaintiff") brought claims for sexual harassment, sex-based discrimination, and retaliation under Title VII of the Civil Rights Act against Defendant Amazon.com Services LLC ("Amazon" or "Defendant"). [1]. Before the Court now is Defendant's motion for summary judgment on Plaintiff's claims. [34]. For the reasons stated below, Defendant Amazon's motion is granted

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for

1

trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

## BACKGROUND[1]

### I. Plaintiff and Plaintiff's Employment with Amazon

Plaintiff Collins identifies as pansexual. [41-3] ¶ 3. On September 12, 2021, Plaintiff was hired by Amazon as a Fulfillment Associate. *Id.* ¶ 2. Associates work various stations at Amazon. [41-3] ¶ 5. For the majority of his employment, Plaintiff worked "finalizing," which involved checking the final products. *Id.* Later in his employment, Collins also worked in the quality department and did work on "Titan,"

---

[1] The facts in this Background section are undisputed unless otherwise noted. The Court takes these facts from Plaintiff's Response to Defendant's Statement of Material Facts [41-3] and Plaintiff's Response to Defendant's Statement of Material Facts [43].

2

a machine that cuts paper. *Id.* Plaintiff did not discuss his sexuality with anyone at Amazon. *Id.* ¶ 4.

Due to the risk of creating safety hazards or risking exposure of confidential information, Amazon prohibits use of mobile phones in working areas under certain circumstances. [41-3] ¶ 8. This prohibition encompasses using mobile phones to create recordings. *Id.* ¶¶ 8, 10. Plaintiff was aware of Amazon's mobile phone use policy, including that Amazon prohibits recordings in the workplace. *Id.* ¶¶ 9–10.

Amazon monitors the time that associates are not actively working at their stations or "idle time." [41-3] ¶ 11. When an associate reaches 30 minutes of idle time, leaders are alerted and the associate's manager is expected to complete a "seek to understand" meeting to ask the associate if there was a reason for the excessive idle time. *Id.* ¶¶ 12–13. The leader reduces the idle time incurred if the associate provides an explanation for the idle time. *Id.* ¶ 14. Associates begin receiving discipline at 30 minutes of idle time absent an excusable explanation. *Id.* ¶ 15. The associate receives a written warning if the final amount of idle time exceeds 30 minutes. *Id.* Discipline progresses with each additional violation. *Id.* ¶¶ 12, 15. An associate could be subject to termination if the associate incurs more than two hours of idle time on a shift. *Id.* ¶ 16.

**II.     Interactions with Valerie Jackson and Subsequent Investigations**

Valerie Jackson also is employed as an associate at Amazon. [41-3] ¶ 17. Jackson acts as a learning ambassador. *Id.* In this capacity, Jackson did not have the authority to discipline other associates, including Plaintiff. *Id.* ¶ 18. Collins believes

that Jackson perceived him to be gay. *Id.* ¶ 19.

Issues between Jackson and Collins arose in May 2023. [41-3] ¶ 20. Amazon distributed flowers to mothers in recognition of Mothers' Day. *Id.* Collins took a flower and Jackson accused Plaintiff of stealing her flower. *Id.* Collins testified Jackson called him a "thief," told him "you don't take what doesn't belong to you . . . I don't care if it's a penny on the ground." *Id.* Following this interaction, Plaintiff perceived "tension" in his relationship with Jackson and felt like Jackson was staring at him. *Id.* ¶ 21. Collins subsequently asked to be moved to a different part of the building to limit his interactions with Jackson. *Id.* Plaintiff and Jackson did not converse again between May 2023 and fall 2023. *Id.* ¶ 24.

Collins believes Jackson implied to other individuals at Amazon that she did not like Plaintiff. [41-3] ¶ 22. Plaintiff testified that other associates named Kennedy and Charles had one conversation with him about how Jackson did not like him and had "hostile words or energy" towards him. *Id.* Collins testified that his manager, Dyami Peebles was present during the conversation with Kennedy and Charles when they relayed that Jackson did not like Plaintiff. *Id.*

Collins testified another associate, Julian Johnson, told Plaintiff in September of 2023 that Jackson had referred to Plaintiff as a "faggot" in a conversation with Johnson. [41-3] ¶ 25; [37-6] Investigation Report at 508 (reporting Jackson's statement as "That's the faggot that stole my flower."). Plaintiff reported what Johnson had told him to his manager Peebles, who directed Plaintiff to report the incident to Human Resources. *Id.* ¶ 27. On October 2, 2023, Plaintiff reported the

4

incident to Human Resources. *Id*. Amazon conducted an investigation into Plaintiff's complaint. [41-3] ¶ 28. The investigator, Brooke Bardin, interviewed Collins, Johnson, and Jackson. *Id*. Jackson denied making the statement. *Id*. Johnson did not identify any other witnesses to the alleged statement. *Id*. Collins believes Jackson may have called him a "faggot" on more than one occasion because that is "her character," but Collins is only aware of one instance. [43] ¶ 1.

During the pendency of the investigation, Plaintiff had an additional interaction with Jackson. [41-3] ¶ 29. Collins testified that Jackson approached him on October 5, 2023 and referred to him as a "non-factor," meaning irrelevant. *Id*.; [43] ¶¶ 3–4. No one else was present for the interaction, but Plaintiff recorded a portion of the interaction on his personal cell phone. [41-3] ¶ 29. Jackson did not refer to Plaintiff's sex or sexual orientation during this incident. *Id*. Collins reported this incident to the Human Resources investigator and to Peebles, and sent a copy of the video to the investigator. *Id*. ¶ 30. The investigator reviewed the video and included a reference to the video in her investigation report. *Id*. ¶ 31.

The Amazon Human Resources investigation case finding was "unsubstantiated." [41-3] ¶ 32. The investigator recognized that Johnson and Jackson had conflicting stories about their interaction, and that there was no other witness to the conversation. *Id*. Jackson denied that she called Plaintiff a faggot on that occasion or ever. *Id*. Johnson is the only person who ever reported to Plaintiff that Jackson had referred to him as a "faggot" and Collins is not aware of Jackson calling him a "faggot" on any other occasion. *Id*. ¶¶ 26, 32. In reference to Plaintiff's complaint

5

about being called a "non-factor," the investigator acknowledged that Jackson had used the language, but found that the context of the conversation was not clear from the video. *Id.* ¶ 33. Plaintiff admits that he used his mobile phone to make a video recording and that he knew it was against Amazon policy in these circumstances. *Id.* ¶ 34. Plaintiff received a documented coaching for this violation of policy. *Id.*; [37-7] Investigation Report at 542. Jackson was not disciplined as a result of the investigation into Plaintiff's complaint. *Id.* At Plaintiff's request, a manager moved him to another area at the site to no longer work near Jackson. [43] ¶ 10.

Plaintiff also lodged complaints with Human Resources about an additional interaction with Jackson in November 2023. [41-3] ¶¶ 35, 37. Collins stated Jackson approached him and Johnson to disrupt his work and called Plaintiff stupid during this interaction. *Id.* ¶¶ 35–36. On November 3, 2023, Plaintiff filed a complaint about this interaction with the head of the site Human Resources, Paul Taylor. *Id.* ¶ 37. Collins also raised his concerns about the prior investigation. *Id.* ¶ 38. Taylor investigated Plaintiff's concerns, which included interviewing all of the witnesses Plaintiff identified. *Id.* ¶ 39. Like the first investigation, Taylor concluded Plaintiff's claims were unsubstantiated. *Id.* ¶ 40. Johnson recalled an interaction between Collins and Jackson but did not recall the specifics of what was communicated. *Id.*

After November 2, 2023, Plaintiff did not have another verbal interaction with Jackson, though he testified that Jackson continued to stare at him. [41-3] ¶¶ 41–42. Collins did not report continued staring. *Id.* ¶ 42. Furthermore, Collins testified that Jackson imitated his walk for approximately three seconds on one occasion at some

6

point after October 3, 2023. *Id.* ¶¶ 23, 43. He does not recall if his reported this conduct and Amazon has no record of a report. *Id.* Finally, Plaintiff testified that Jackson referred to him as "ghetto" within earshot of him on one occasion. *Id.* ¶ 44. Collins did not report this incident either. *Id.*

### III. Collins's Termination from Amazon

On March 21, 2024, Plaintiff received a written warning for accumulating 183 minutes of idle time. [41-3] ¶ 47. At the "seek to understand" meeting, Plaintiff could not explain the accrued idle time or identify any barriers that created the idle time. *Id.* ¶ 48. However, Plaintiff testified that it did not make sense for him to accrue this amount of idle time while everyone around him was working. *Id.*; [43] ¶ 16. Amazon offered additional training on the machine at which Collins was working when he received the idle time warning, but he declined because he felt he did not need additional training. [41-3] ¶ 49. On March 23, 2024, Plaintiff received another idle time violation for 210 minutes of idle time from his Manager Crystal Marie Kantor. *Id.* Plaintiff was terminated for the idle time violations. *Id.* ¶ 51. At the time of his termination, Collins did not respond to or dispute the idle time. *Id.* Plaintiff testified that he did not dispute the idle time when he was terminated because he was tired. *Id.* ¶ 52. Although Collins admits the machines labeled his idle time as 183 minutes and 210 minutes, he disputes that he had that much time. *Id.* ¶ 53 Human Resources did not investigate Collins's excessive idle time violations. [43] ¶ 17. Plaintiff believes he was terminated for complaining about his manager Peebles's performance, though no records exist of any such complaints. [41-3] ¶ 54.

7

Collins testified he is not aware of any associate who reached 100 minutes of idle time. [43-1] ¶ 56. Plaintiff understands that associates receive discipline after reaching 20 to 30 minutes of idle time and he is not aware of any associate who has accumulated 20 minutes of idle time without receiving discipline. *Id.* ¶ 57. The only individual Collins identified as being treated more favorably than him is Jackson because she did not receive discipline after investigations into his claims. *Id.* ¶ 58.

## ANALYSIS

Defendant Amazon moves for summary judgment on Plaintiff's sexual harassment, sex discrimination, and retaliation claims. Plaintiff contends he has established a *prima facie* case for his claims, thus creating genuine issues of material fact that preclude summary judgment. The Court looks at each claim in turn.

### I.  Local Rule 56.1

"Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation omitted). Under Local Rule 56.1, "a party must cite specific evidentiary material that controverts the fact" if denying the moving party's material statement. See L.R. 56.1(e)(3). Plaintiff's memorandum in opposition to Amazon's motion cites *no* Local Rule 56.1 statements and cites directly to documents produced in this

litigation but are not cited in or attached to either party's Local Rule 56.1 statements. Accordingly, the Court disregards citations in Plaintiff's memorandum not attached to a Local Rule 56.1 statement. *Anderson v. Mott St.*, 2023 WL 5227391, at *2 (N.D. Ill. Aug. 14, 2023) ("citations directly to the record to establish additional facts is a 'serious violation of Local Rule 56.1' that has led courts in this district to disregard those additional facts in deciding the motion before it").

## II.     Sex Discrimination

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 659–62 (2020) (interpreting Title VII to prohibit discrimination on the basis of sexual orientation). A plaintiff alleging employment discrimination has "two paths to survive summary judgment." *Gamble v. County of Cook*, 106 F.4th 622, 625 (7th Cir. 2024). One path is to "generally present enough evidence from which a reasonable jury could find that [d]efendants discriminated against [plaintiff] because of" the plaintiff's protected characteristics. *Gamble*, 106 F.4th at 626 (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). The other path is to establish a dispute of material fact under the well-known framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Plaintiff Collins cannot succeed under either approach.

The Court first looks to the *McDonnell Douglas*. To establish a *prima facie* case of discrimination, Plaintiff must prove: (1) he is a member of a protected class; (2) he

performed reasonably on the job in accordance with Amazon's legitimate expectations; (3) despite his reasonable performance, he was subjected to an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably by Amazon. *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F. 3d 216, 225 (7th Cir. 2017). If Plaintiff makes this *prima facie* showing, the burden shifts to Amazon to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If Amazon can do so, the burden shifts back to Plaintiff to offer evidence that Amazon's explanation is pretextual. *Id.* Here, although there is no dispute Plaintiff is a member of a protected class and suffered an adverse employment action, Collins has not established a *prima facie* case of sex discrimination.

The undisputed facts show Collins's job performance failed to meet Amazon's legitimate expectations. Amazon monitors its associates' idle time and progressively disciplines associates after 30 minutes or more of unexplained accrued idle time. [41-3] ¶¶ 11, 15. Associates with two or more hours of idle time may be terminated. *Id.* ¶ 16. Within the span of days, Collins received two idle time violations for 183 minutes and 210 minutes, respectively. *Id.* ¶¶ 47, 49. When given the opportunity to explain or identify any barriers that created the idle time at the time he was cited for the violations, Collins offered none. *Id.* ¶¶ 48, 51. Instead, Plaintiff disputed the idle time as not making sense and unlike him. *Id.* ¶¶ 48, 52. To create a dispute of material fact, Collins "must do more than challenge the judgment of his superiors." *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337–38 (7th Cir. 1991); *see*

*also Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998) (explaining that plaintiff's subjective self-appraisal cannot create a genuine issue of fact regarding the honesty of employer's assessment of his performance); *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) (noting that "[a]n employee's self-serving statements about his ability" are insufficient to contradict an employer's negative evaluation).

Plaintiff's references to Amazon awarding him "Supportive Feedback Document Quality – Documented Positive" commendations are unavailing. [41-1] at 5. Critically, these commendations are not incorporated into Plaintiff's Local Rule 56.1 statements nor are they included in the record before the Court. The Court does not have the documents to review or any context about the commendations' significance to evaluate them.[2] Accordingly, the Court disregards this evidence. Nevertheless, even if these documents accurately captured exemplary performance, as Plaintiff argues, prior recognition does not insulate Collins from consequences for his subsequent idle time violations. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) ("In most cases, when a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but whether the employee was performing well at the time of his termination.") (cleaned up). Because it is undisputed that Collins violated Amazon's idle time and workplace phone use policies, no reasonable jury could find that Collins was meeting Amazon's legitimate

---

[2] Amazon represents that the eight commendations were issued in March 2021, April 2022, August 2022, and December 2022 – years before the incidents at issue here. [42] at 4–5.

11

job performance expectations. *See, e.g.*, *Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 676 (7th Cir. 2006) ("It cannot be disputed that his behavior...failed to meet [the employer's] 'legitimate expectations' as established by its Code of Conduct and Workplace Violence policy."); *Hall v. Vill. of Flossmoor Police Dep't*, 2012 WL 6021659, at *5 (N.D. Ill. Dec. 4, 2012) ("An employee who violates his employer's established policies fails to perform adequately or meet his employer's legitimate expectations.").

Although the Court could conclude the *McDonnell Douglas* analysis because Collins did not satisfy Amazon's legitimate expectations, the Court will continue with the analysis in the alternative. Plaintiff's *prima facie* case fails for an additional, independent reason: he has not shown that a similarly situated associate outside of his protected class was treated more favorably. "The similarly-situated analysis calls for a flexible, common-sense examination of all relevant factors. All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (cleaned up). "In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 847 (cleaned up).

Here, Collins identifies Jackson as a similarly situated comparator because she was employed at the same organization and also engaged in workplace

12

confrontations. [41-1] at 6. According to Plaintiff, Jackson was engaged in similar or more severe workplace misconduct, namely her interactions with Collins, but Amazon treated her more leniently than Plaintiff. *Id.* It is undisputed Amazon did not discipline Jackson following the investigation into Plaintiff's complaints, but in contrast, Amazon disciplined Collins for recording Jackson in violation of Amazon's workplace phone use policies and eventually terminated him for his idle time violations. [41-3] ¶ 34. But Jackson is not comparable to Collins because, based on unrefuted evidence, no other associate, including Jackson, accrued a similar amount of idle time as Collins. [41-3] ¶¶ 5758; *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016) ("An employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated."). Collins generally identifies female and heterosexual employees as similarly situated. [41-1] at 6. But, general references to "female" and "heterosexual" employees are insufficient. *Bragg v. Caterpillar Inc.*, 2011 WL 1131325, at *7 (N.D. Ill. Mar. 28, 2011) ("[Plaintiff] must identify specific employees that are similarly situated, and thus [his] general references to similarly-situated employees fails to establish [his] *prima facie* case."). Accordingly, Collins fails to establish the final prong of *McDonnell Douglas*.

The Court's conclusion is the same under the holistic approach from *Ortiz*. Under *Ortiz*, all of the evidence "belongs in a single pile and must be evaluated as a whole" to determine discriminatory intent. 834 F.3d at 766. The Court finds that when all the evidence is considered in a light most favorable to Collins, a reasonable factfinder simply could not find that he suffered an adverse employment action

13

because of his sex. Here, Collins lodged complaints that Jackson called him a "faggot" and "non-factor" in fall 2023 along with other conduct in the same time period, received notice of violations of the idle time policy in March 2024, and was terminated upon receiving his second idle time violation in March 2024. These events are too remote to conclude Amazon terminated Plaintiff because of his sex or sexual orientation. "For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, [the Seventh Circuit] typically allow[s] no more than a few days to elapse between the protected activity and the adverse action." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). Here, the adverse action occurred nearly half a year after Collins complained of Jackson's conduct, which is far too late to withstand summary judgment in the absence of other evidence of sex-based discrimination. Amazon thus is entitled to summary judgment on Plaintiff's sex discrimination claim.

### III. Hostile Work Environment

Plaintiff Collins asserts he was discriminated against by being subjected to a hostile work environment. To succeed on his harassment claim, Plaintiff must prove: (1) he was subjected to unwelcome conduct, advances, or requests; (2) based on his sex (or sexual orientation); (3) that was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 636 (7th Cir. 2019).

An employer violates Title VII when "the workplace is permeated with

14

discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). When determining whether the harassment was severe or pervasive, the Seventh Circuit employs both an objective and a subjective test. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *see also Equal Employment Opportunity Commission v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018). The subjective beliefs of an employee are not sufficient alone to meet this standard. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 548 (7th Cir. 2011). "[T]he environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (quotations omitted).

Whether conduct is sufficiently severe or pervasive to support a hostile work environment claim requires the Court to examine the totality of the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 601 (7th Cir. 2014). "[O]ccasional vulgar language, and coarse, rude, or boorish behavior will not amount to a hostile work environment." *Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022).

Collins cites several instances of Jackson's conduct and argues that when considered in their totality show pervasive hostility and harassment. Although some

15

factors weigh in Collins's favor, the totality of the circumstances do not support finding he was subjected to harassment.

Collins maintains that Jackson called him "faggot" on one occasion in a conversation with a co-worker and mocked his walk on a separate occasion. [41-3] ¶¶ 23, 25, 43. He further maintains that Jackson stared at him in a manner that felt intimidating and confronted him on a separate occasion and called him a "non-factor" during this interaction. [41-3] ¶ 29; [43] ¶¶ 3–4. But that is where the support for Collins's claim ends and the weaknesses begin. For one, none of these incidents involved physical threats. *See Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 601 (7th Cir. 2014). And Collins points to no properly submitted evidence establishing that these incidents unreasonably interfered with his work performance. *Id*. Rather, Collins was moved, at his request, to another area at the site to no longer work near Jackson. [43] ¶ 10.

The Court recognizes that use of unambiguously derogatory slurs is egregious and can contribute to a hostile work environment. Furthermore, the Court does not condone the use of such slurs and mocking mannerisms in a manner that can be construed as sex-specific. However, in this case, the small number of harassing remarks based upon Plaintiff's sexual orientation coupled with the fact that most of the remarks were made outside of Plaintiff's presence, leads this Court to believe that the remarks are not severe or pervasive enough to be judged objectively hostile. Based on the totality of these circumstances, Collins has not presented evidence from which a reasonable jury could find that the environment so severe as to alter the conditions

of his employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Although Jackson's behavior was obnoxious and entirely inappropriate, no facts suggest that her conduct in these encounters interfered with Collins's ability to do his job. *Anderson v. Am. Foods Grp. LLC*, No. 25-1069, 2026 WL 161340, at *3 (7th Cir. Jan. 21, 2026).

## IV. Retaliation

Title VII prohibits an employer from retaliating against an employee for opposing or participating in an investigation of an unlawful employment practice. 42 U.S.C. § 2000e-3(a); *see also Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). Like in employment discrimination cases, a plaintiff may establish a *prima facie* case of retaliation in two fashions. Either Collins must provide evidence that would allow a reasonable factfinder to conclude that the plaintiff's protected characteristic caused the discharge or other adverse employment action, *Ortiz*, 834 F.3d at 765, or Collins may invoke the burden-shifting framework of *McDonnell Douglas*. *Lewis v. Wilkie*, 909 F.3d 858, 866–67 (7th Cir. 2018). Under the McDonnell Douglas framework in the retaliation context, Collins must show "(1) he engaged in a protected activity, (2) he performed his job duties according to his employer's legitimate expectations, (3) he suffered an adverse action, and (4) he was treated less favorably than similarly situated employees who did not engage in protected activity." *Id.* The retaliation must be the "but-for" cause of the adverse action, "not merely a contributing factor." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 371 (7th Cir. 2019) at 371 (internal citation omitted).

17

Like his discrimination claims, Plaintiff cannot succeed under *McDonnell Douglas* or *Ortiz*. As discussed above, the undisputed facts show that Plaintiff's job performance did not meet Defendant's legitimate expectations nor does Plaintiff present any evidence of any similarly-situated employees. *See supra* Section II. Accordingly, a reasonable factfinder could not conclude that any alleged retaliation caused Plaintiff's termination, or any other adverse employment action, under the *McDonnell Douglas* framework.

Collins has no greater success under the *Ortiz* approach. It is undisputed that Collins violated company policy by accruing multiple instances of more than 30 minutes of idle time. Although Collins attempts to make much of the "suspicious timing" between his complaints in September through November 2023 and his termination in March 2024, that is not sufficient to survive summary judgment on his retaliation claim. [41-1] at 10; *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010) ("timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim") (quoting *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007)).

## CONCLUSION

For the stated reasons, Defendant Amazon.com Services LLC's motion for summary judgment [34] [37] is granted as to all of Plaintiff Collins's claims. The Clerk is directed to enter judgment in Amazon's favor and against Plaintiff and terminate the case.

E N T E R:

Dated: February 17, 2026

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge